UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| PATRICK P. LUKAS, derivatively on behalf of MILLER ENERGY RESOURCES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 3:11-CV-422 (*Lead Case*)[1] (VARLAN/SHIRLEY) |
| MERRILL A. MCPEAK, SCOTT M. BORUFF, DELOY MILLER, JONATHAN S. GROSS, HERMAN GETTELFINGER, DAVID HALL, CHARLES M. STIVERS, DON A. TURKLESON, and DAVID VOYTICKY, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| MILLER ENERGY RESOURCES, INC., | ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

This consolidated civil action is before the Court on the defendants' Motion to

Dismiss [Doc. 12].[2]  Pursuant to Fed. R. Civ. P. 12(b)(6) and 23.1, the defendants seek the

dismissal of this case primarily based on the argument that plaintiff failed to make a demand

---

[1]Pursuant to the Order of the Court on June 26, 2012 [Doc. 36], this case was consolidated with *Flynn v. Miller Energy Resources, et al.*, No. 3:11-CV-412, and the instant case was designated as the lead case.

[2]A Motion to Dismiss [Doc. 14] was also filed in case number 3:11-CV-412 prior to consolidation. Because the claims and arguments presented in that case are virtually indistinguishable from those in the lead case, this opinion and accompanying order will serve as a ruling on that motion as well.

on Miller Energy's Board of Directors to investigate and, if appropriate, pursue an action on Miller Energy's behalf prior to bringing this lawsuit as required by Rule 23.1 and Tenn. Code Ann. § 48-17-401. The plaintiff has responded to the motion [Doc. 29] and the defendants have replied [Doc. 30]. The matter is ripe for determination.

After careful consideration and for the reasons set forth herein, the Court will **GRANT** the motion to dismiss.

I.     **Background[3]**

A.     **The Parties**

Lead plaintiff Patrick P. Lukas is a current shareholder of defendant Miller Energy Resources, Inc. ("Miller Energy" or the "Company") and has continuously held Miller Energy stock at all relevant times [Doc. 1 ¶ 15]. Defendant Miller Energy is a Tennessee corporation engaged in the exploration, production, and drilling of oil and natural gas resources in the United States [*Id.* ¶¶ 1, 16]. The nine individual defendants are Miller Energy's current directors [*Id.* ¶¶ 17–25]. Four of the individual defendants also serve as Miller Energy officers: Scott Boruff is Chief Executive Officer; Deloy Miller is Chief Operating Officer; David Voyticky is President and interim Chief Financial Officer; and David Hall is the Chief Executive Officer of Cook Inlet Energy, a subsidiary of Miller Energy [*Id.* ¶¶ 18–19, 22, 25; Doc. 12 at p. 2]. The remaining five individual defendants –

_____

[3]For the purposes of a motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all the factual allegations contained in the complaint" (citations omitted)).

General Merrill A. McPeak, Don A. Turkleson, Jonathan S. Gross, Charles M. Stivers, and Herman Gettelfinger – are directors from outside the Company [Doc. 1 ¶¶ 17, 20–21, 23–24].

## B. The Valuation of the Company's Assets

On December 16, 2009, the Company announced that it had acquired in a bankruptcy proceeding certain oil and gas assets in Alaska, valued at $325 million, for a total cost of $2.25 million [*Id*. ¶¶ 2, 30]. The facilities would be operated through the Company's wholly-owned subsidiary, Cook Inlet Energy, LLC [*Id*. ¶ 30]. Over time, Miller Energy announced the increased value of these assets to over $400 million in March 2010 [*Id*. ¶ 31–34], over $800 million in May 2010 [*Id*. ¶ 39], and over $1.2 billion in August 2010 [*Id*. ¶ 41]. The announced valuation of the Alaskan assets was positively reflected in the Company's financial reports and increased stock price [*Id*. ¶ 2].

On December 23, 2010, the Company entered into an amended employment agreement with defendant Boruff which provided for a substantial increase in compensation and options to purchase shares of Miller Energy stock [*Id*. ¶ 44–45]. The agreement was recommended by the Compensation Committee (consisting of defendants McPeak, Stivers, and Gettlefinger) and approved by the Board in recognition for the Company's financial performance [*Id*. ¶¶ 28, 46].

On July 28, 2011, a website called *TheStreetSweeper* published a report stating the Company's Alaska assets, valued at $350 million on the books, were actually worth $25 million to $30 million and offset by $40 million worth of liabilities [*Id*. ¶ 51]. While Miller Energy disputes the accuracy of this report and questions the motives of its authors, the

plaintiff alleges and the Company acknowledges that the Company's stock price did decline following the posting of this report [*Id*. ¶¶ 4, 52].

## C. The SEC Filings

On July 29, 2011, Miller Energy filed its Annual Report on Form 10-K with the Securities and Exchange Commission ("SEC") for its fiscal year ending April 30, 2011 [*Id*. ¶¶ 5, 53–54]. The Annual Report contained a statement by KPMG, the Company's auditor, stating that the Company's financial statements fairly presented the Company's financial position as of April 30, 2011 [*Id*. ¶ 54]. The Annual Report also included an Exhibit 23, which contained KPMG's signed consent to the use of its report by Miller Energy [*Id*.]. The Annual Report further stated that the Company's Audit Committee (consisting of defendants McPeak, Stivers, Gross, and Voyticky) determined that certain financial statements could no longer be relied upon as a result of errors in those financial statements and they would be restated [*Id*. ¶ 55].

On August 1, 2011, Miller Energy filed a Form 8-K with the SEC stating that the Annual Report, filed on July 29, 2011, and its financial statements were filed prior to KPMG completing its review and without KPMG's consent to use their report and should not be relied upon [*Id*. ¶ 56]. The Form 8-K also stated that the Company expected to file an amended Annual Report "as soon as possible" with revised financial statements [*Id*.]. These disclosures resulted in a decline in Miller Energy's stock price [*Id*.].

On August 9, 2011, the Company filed Amendment No. 1 to the Annual Report with the SEC which identified its Annual Report as deficient, removed the audit report and consent report of KPMG, and corrected certain "computational errors" in the financial statements included in the Annual Report [*Id.* ¶ 58]. The Amendment No. 1 also stated that the Company expected to file another amended Annual Report containing audited financial statements as soon as "(1) the Audit Committee of our Board of Directors completes its review of the events which led to the filing of the 2011 10-K prior to the completion of KPMG's review of our 2011 10-K and the issuance of its audit report, and (2) KPMG LLP has completed its review of our fiscal year 2011 financial statements and issues its report thereon." The Amendment No. 1 further stated that the Audit Committee had engaged Andrews Kurth LLP as special independent legal counsel to conduct a review of the filing [*Id.*].

On August 29, 2011, the Company filed an amended Annual Report on Form 10-K with the SEC which, according to the plaintiffs, described some of the losses the Company had already incurred and would continue to incur as a result of "the materially false and misleading statements caused to be issued by the Defendants" [*Id.* ¶ 59]. The Amended Annual Report states that the restatement of the Company's historical financial statements "may have a material adverse effect on our business and stock price" and the erroneously filed 10-K "will adversely impact our ability to raise additional capital" [*Id.* ¶¶ 60–61]. Additionally, the Amended Annual Report advises that the Company may be subject to regulatory actions surrounding the filing of the Annual Report which could result in

5

increased legal fees and fines [*Id.* ¶ 62]. Plaintiff claims that, as a result of these actions, "the price of the Company's stock still has not recovered" [*Id.* ¶ 64].

### D.    Plaintiff's Claims

Plaintiff claims that the defendants, because of their positions of control and authority as directors and/or officers of Miller Energy, "were able to and did, directly and/or indirectly, exercise control over the wrongful acts" alleged [*Id.* ¶ 68]. Plaintiff alleges that the defendants' conduct was a "knowing and culpable violation of their obligations as directors of Miller, the absence of good faith on their part, and a knowing or willful disregard for their duties to the Company and its shareholders and a breach of their fiduciary duty of loyalty, good faith, oversight, and diligence in management and administration of its affairs that the Defendants were aware posed a risk of serious injury to the Company" [*Id.* ¶ 72]. Plaintiff further alleges that the defendants "completely abdicated their oversight duties to the Company by failing to implement internal procedures and controls necessary to prevent the wrongdoing alleged" [*Id.* ¶ 77].

Plaintiff asserts the following claims, organized as "counts," against the defendants: (I) breach of fiduciary duty and disseminating materially false and misleading information; (II) breach of fiduciary duties for failing to properly oversee and manage the company; (III) unjust enrichment; (IV) abuse of control; (V) gross mismanagement; and (VI) waste of corporate assets[4] [*Id.* ¶¶ 83–111].

---

[4]Count VI is mislabeled in the Complaint as the second Count V.

6

## E.     The Demand Allegations

This action was filed on August 31, 2011.  Plaintiff admits that he has not made any demand on the Board to institute this action "because such a demand would be a futile, wasteful and useless act" [*Id.* ¶ 75].  Plaintiff further alleges he did not make a demand on the Board "because the wrongful acts complained of herein evidence a pattern of conduct showing a wholesale abandonment of their fiduciary duties, including the duty to exercise oversight, due care, and diligence" [*Id.* ¶ 78].  Plaintiff contends the acts complained of "demonstrate a pattern of misconduct, were not, nor could they have been, the product of a valid or good faith exercise of business judgment" [*Id.* ¶ 79].  Plaintiff alleges that demand is excused because "every member of the Board permitted false and misleading statements to be made in SEC filings, thereby abdicating their fiduciary duties to the Company, and severely damaging the Company.  Therefore, every member of the Board faces a substantial likelihood of liability for their breaches of fiduciary duties, unjust enrichment, and other violations of state law" [*Id.* ¶ 80].  Plaintiff alleges demand is excused because:

> defendants issued a series of materially false and/or misleading statements in which they failed to disclose, among other things: (1) that the value of the oil and gas assets in Alaska acquired by the Company was substantially less than that reported by the Company; (2) that the net income reported as a direct result of the acquisition of the Alaskan assets was overstated; (3) that the Company failed to properly classify royalty expense; (4) that the Company did not properly record depletion, depreciation and amortization expenses related to leasehold costs, wells and equipment, fixed assets and asset retirement obligations; (5) that the Company failed to properly calculate and record sufficient compensation expense on equity rewards; (6) that the Company did not properly calculate the liability for Miller's derivative securities; (7) that the Company failed to properly record income taxes;

7

(8) that the Company's financial statements and results were overstated, and in violation of GAAP[5]; (9) that the Company lacked adequate internal and financial controls; and (10) as a result of the foregoing, the Company's financial performance, business and operations were far worse than Defendants disclosed.

[*Id.* ¶ 81.] Finally, plaintiff alleges that demand is excused as to defendants McPeak, Stivers, Gross, and Voyticky because "each served as members of the Audit Committee and breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee . . . allowed or permitted false and misleading statements to be disseminated in the Company's press releases and other disclosures and failed to ensure that adequate internal controls were in place" [*Id.* ¶82].

## II.    Analysis

### A.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a

---

[5]"GAAP" is an acronym for Generally Accepted Accounting Principles.

cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

## B. Demand Futility

Both Fed. R. Civ. P. 23.1 and Tenn. Code Ann. § 48-17-401(b) impose certain requirements in shareholder derivative actions. Specifically, section 48-17-401(b) requires that a derivative complaint "allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why the person did not make the demand." Similarly, Rule 23.1(b)(3) requires a derivative complaint to "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Thus, a

9

shareholder must first make a written demand on the corporation's directors requesting them to prosecute the suit or to take other suitable corrective action. *Lewis ex rel. Citizens Sav. Bank & Trust Co. v. Boyd*, 838 S.W.2d 215, 221 (Tenn. Ct. App. 1992). The demand requirement recognizes the basic principle of corporate governance that the decisions of a corporation, including the decision to initiate litigation, should be made by the board of directors or the majority of shareholders. *Kamen v. Kemper Finan. Servs., Inc.*, 500 U.S. 90, 101 (1991). As noted above, plaintiff admits that he did not make a pre-filing demand upon the Board, but claims that such a demand would be "a futile, wasteful and useless act" [Doc. 1 ¶ 75].

Most states, including Tennessee, recognize an exception to the general demand rule and permit a shareholder to proceed with an independent suit without making a demand when the shareholder can demonstrate that doing so would be futile. *Lewis*, 838 S.W.2d at 222. Defendants' primary argument in support of the motion to dismiss is that the plaintiff has not pled with sufficient particularity the reasons for failing to make a pre-suit demand. The bulk of the parties' pleadings debate the appropriate legal test for determining demand futility, with both parties acknowledging that Tennessee law must govern whether plaintiff was excused from making a demand because Miller Energy is a Tennessee corporation. *See Kamen*, 500 U.S. at 108–09 ("a court that is entertaining a derivative action . . . must apply the demand futility exception as it is defined by the law of the State of incorporation"); *McCall v. Scott*, 239 F.3d 808, 815 (6th Cir. 2001) ("whether the failure to make a demand is excused must be determined under the substantive law of the state of incorporation").

Defendants rely on *Lewis ex rel. Citizens Sav. Bank & Trust Co. v. Boyd*, 838 S.W.2d 215, 221 (Tenn. Ct. App. 1992), which states the general proposition that "courts have excused the demand requirement when the corporation's officers and directors will themselves be defendants or when the officers and directors are in collusion with those who have injured the corporation." Notably, the *Lewis* decision cites to *Deaderick v. Wilson*, 67 Tenn. 108, 131 (1874), a case relied upon by the plaintiff, in support of this general proposition. However, the *Lewis* decision then expounds upon the general proposition regarding demand excused cases as follows:

> In demand excused cases, the grounds for the shareholder's claim are (1) that the board is interested and not independent and (2) that the challenged transaction is not protected by the business judgment rule. *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). Thus, demand excused cases require an examination of the corporate decision-makers' interest and independence, *Levine v. Smith*, 591 A.2d at 212, as well as the good faith and reasonableness of its investigation.

*Lewis*, 838 S.W.2d at 222.[6] Defendants argue that *Lewis*, via the *Aronson* decision, sets forth the standard for demand excused cases in Tennessee. Thus, defendants argue that plaintiff must demonstrate with particularity that a majority of Miller Energy's nine directors are (1) not disinterested or (2) not independent and the complaint fails to do so [*Id*. at p. 12].

The plaintiff objects to this characterization of the demand futility standard in Tennessee and contends that the general rule is as stated in *Deaderick*, that demand will be

---

[6]*Levine v. Smith* is found at 591 A.2d 194 (Del. 1991). Both *Aronson* and *Levine* were overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000), regarding the appropriate standard of appellate review.

11

excused as futile where the corporation's officers and directors are defendants in the action or are in collusion with the defendants, and no more [Doc. 29 at p. 12]. Plaintiff cites several other Tennessee cases in support of this position, including *Wallace v. Lincoln Sav. Bank*, 15 S.W. 448, 449 (Tenn. 1891) (a derivative suit may proceed "where the corporation is disabled from suing, as where the managing agents of the corporation (its officers and directors) are themselves to be the defendants"); *Peeler v. Luther*, 135 S.W.2d 926, 928 (Tenn. 1940) (demand "need not be made where the corporation is under the control of the wrongdoers or of persons who are necessary parties defendant"); and *Akin v. Mackie*, 310 S.W.2d 164, 168 (Tenn. 1958) (same). In short, the plaintiff urges the Court to conclude that demand is excused because all nine of the Board members are named as defendants and to reject the further analysis of *Lewis* requiring examination whether the directors exercised disinterested and independent business judgment.

Defendants respond that demand should be not excused merely because all the members of the Board are named as defendants as suggested by *Deaderick*; otherwise, plaintiffs could easily circumvent the demand requirement by naming all members of the Board as defendants [Doc. 12 at p. 12; Doc. 30 at p. 3]. Defendants cite to a number of cases from other jurisdictions in support of this proposition, but have not provided any authority from Tennessee courts on this point, nor is the undersigned aware of any.

Although plaintiff argues that the *Lewis* decision did not expressly adopt the *Aronson* test, it appears that the test for demand futility is that as stated above by *Lewis* and has been recited and followed by both state and federal courts. *See McCarthy v. Middle Tenn. Elec.*

12

*Membership Corp.*, 466 F.3d 399, 410 (6th Cir. 2006); *Lay v. Burley Stabilization Corp.*, 2010 WL 2639931 at *4 (E.D. Tenn. June 28, 2010); *DuVall v. Ecoquest Int'l, Inc.*, 2007 WL 2811052 at *2 (E.D. Mo. Sept. 24, 2007); *Humphreys v. Plant Maint. Servs., Inc.*, 1999 WL 553715 at *6 (Tenn. Ct. App. July 30, 1999). However characterized, *Lewis* appears to state the test for demand futility in Tennessee and this Court is bound to follow it. *See Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) ("A federal court sitting in diversity applies the substantive law of the state in which it sits"). Thus, this Court must determine whether the complaint has alleged with particularity (1) that the Board is interested and not independent and (2) that the challenged transaction is not protected by the business judgment rule.[7] *Lewis*, 838 S.W.2d at 222.

### 1.    Interest

A director is considered interested in a decision made by the board "where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders." *Rales*, 634 A.2d at 936. "Directorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Id*. Citing *Rales*, defendants contend that the complaint contains no allegations that the directors are unable to base their decisions on the corporate merits of the

---

[7]Defendants also contend that because plaintiff appears to be challenging the Board's failure to act, rather than challenging an affirmative decision by the Board, only the first prong of the *Aronson* analysis applies and the issue is "whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment" [Doc. 12 at p. 11, citing *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)]. In light of the subsequent analysis, the Court need not resolve this issue.

subject before the Board rather than extraneous considerations or influences [Doc. 12 at p. 12; *Rales,* 634 A.2d at 936].  Defendants also claim the complaint does not allege that, as a result of the challenged decisions, any director received a personal financial benefit not equally shared by the stockholders [*Id.*].

Plaintiff contends that each defendant "personally participated in the misconduct alleged in the Complaint" and were directors during the time period the Company "disseminated false and misleading disclosure materials" [Doc. 29 at p. 16, citing Doc. 1 ¶ 76].  Plaintiff further alleges that the defendants "completely abdicated their oversight duties to the Company by failing to implement internal procedures and controls necessary to prevent the wrongdoing" [*Id.*, citing Doc. 1 ¶ 77].  Plaintiff claims that the defendants "caused and permitted to be filed disclosure materials" containing the following misrepresentations: (1) that the value of the oil and gas assets in Alaska acquired by the Company was substantially less than that reported by the Company; (2) that the net income reported as a direct result of the acquisition of the Alaskan assets was overstated; (3) that the Company failed to properly classify royalty expense; (4) that the Company did not properly record depletion, depreciation and amortization expenses related to leasehold costs, wells and equipment, fixed assets and asset retirement obligations; (5) that the Company failed to properly calculate and record sufficient compensation expense on equity rewards; (6) that the Company did not properly calculate the liability for Miller's derivative securities; (7) that the Company failed to properly record income taxes; (8) that the Company's financial statements and results were overstated, and in violation of GAAP; (9) that the Company lacked adequate

14

internal and financial controls; and (10) as a result of the foregoing, the Company's financial performance, business and operations were far worse than Defendants disclosed [Doc. 29 at p. 17, citing Doc. 1 ¶¶ 50, 81]. Plaintiff points out that the Audit Committee, consisting of defendants McPeak, Stivers, Gross, and Voyticky, "were in the best position to control the Company's financial disclosures" [Doc. 29 at p. 17, citing Doc. 1 ¶ 82]. Plaintiff finally contends that defendant Boruff "reaped windfall compensation awards that stemmed from the meteoric rise of [the] Company's stock price that was, in turn, predicated on the false disclosures" [*Id.*, citing Doc. 1 ¶ 28].

A careful review of the Complaint, however, reveals that the plaintiff has failed to plead with particularity *facts* showing that a majority of the Board will be materially affected in a manner not shared by the corporation or the stockholders. *See, e.g., In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 618 (6th Cir. 2008) ("Broad, generalized and conditional statements . . . do not constitute facts pleaded with particularity") (quoting *In re Xcel Energy, Inc.*, 222 F.R.D. 603, 607 (D. Minn. 2004)). Indeed, the vast majority of the allegations are recitations from the Company's various press releases and/or financial statements, such as "the Company announced," "the Company issued a press release," or "the Company filed its Quarterly Report" [*See, e.g.*, Doc. 1 at ¶¶ 30–32]. These allegations do not contain any facts showing that any individual defendant did or failed to do anything, much less that any defendant will be materially affected in a manner not shared by the corporation or the stockholders. Quoting from the Annual Report, the plaintiff alleges that "the Audit Committee determined that certain of the Company's financial statements . . . could no

15

longer be relied upon as a result of errors in those financial statements" [*Id*. at ¶ 55].

Similarly, quoting from the Form 8-K filed on August 1, 2011, the plaintiff again alleges that

the "Audit Committee determined that the Company's consolidated balance sheet at April

30, 2011, and the Company's consolidated statements of operations, stockholder's equity and

cash flows for the year then ended, as well as the report of KPMG dated July 29, 2011 on

such statements . . . should not be relied upon" [*Id*. at ¶ 56].  Even interpreting these

allegations as against the individual members of the Audit Committee, they do not show

actions or inactions in which the Committee members would be materially affected in a

manner not shared by the corporation and the stockholders.  Indeed, it seems entirely

plausible that the defendants, the Company, and the stockholders suffered as a result of these

events.

Within the section of the Complaint described as "derivative and demand allegations,"

the plaintiff alleges that defendants "completely abdicated their oversight duties to the

Company by failing to implement internal procedures and controls necessary to prevent the

wrongdoing" and "the wrongful acts complained of herein evidence a pattern of conduct

showing a wholesale abandonment of their fiduciary duties, including the duty to exercise

oversight, due care, and diligence" [Doc. 1 ¶¶ 77–78].  These conclusory allegations of a

failure to act or failure to oversee are often referred to as a *Caremark* violation described as

follows:

> [A] director's obligation includes a duty to attempt in good faith to
> assure that a corporate information and reporting system, which the
> board concludes is adequate, exists, and that failure to do so under

some circumstances may, in theory at least, render a director liable for losses caused by non-compliance with applicable legal standards.

*In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959, 970 (Del. Ch. 1996). The *Caremark* court described this theory as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Id.* at 967. To succeed on such a claim, a plaintiff must establish "a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists." *Id.* at 971. Thus, a plaintiff can only overcome the demand requirement with "well-pleaded facts to suggest a reasonable inference that a majority of the directors consciously disregarded their duties over an extended period of time." *Kenney v. Koenig*, 426 F. Supp. 2d 1175, 1182 (D. Colo. 2006) (quoting *David B. Shaev Profit Sharing Account v. Armstrong*, 2006 WL 391931 at *1 (Del. Ch., Feb. 13, 2006)).

The plaintiff's claims are replete with general averments of culpability and lengthy quotes from press releases and financial reports. The complaint lacks allegations of specific failures of the directors or the Audit Committee beyond the conclusory allegation that they "allowed or permitted false and misleading statements to be made" [Doc. 1 at ¶ 80]. Plaintiff alleges only that the defendants were Board members[8] during the period when the accounting improprieties occurred. "That is not enough." *Kenney*, 426 F. Supp. 2d at 1183. The

---

[8]As defendants point out, not all of the individual defendants were members of the Board during the entire period of the events alleged. Defendants Gross, McPeak, and Voyticky joined the Board in April 2010 [Doc. 1 ¶¶ 17, 20, 25], and defendant Turkleson joined the Board in January 2011 [*Id.* ¶ 24]. Thus, these defendants could not have "allowed or permitted" false and misleading statements to be issued prior to joining the Board.

complaint contains no specific factual allegations of the role played, if any, by members of the Audit Committee in preparing or approving the financial reports or which specific oversight duties were neglected. The complaint contains no specific factual allegations of improprieties discovered and ignored or covered up. *See In re Ferro Corp. Derivative Litig.*, 511 F.3d at 621 ("Plaintiffs failed to allege 'any particular facts whatsoever to establish what roles, if any, the individual defendants had in causing and/or covering up the accounting irregularities'"). The Company's eventual recognition that its internal controls were ineffective does not necessarily equate to "a sustained or systematic failure of the board to exercise oversight." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d at 971. Instead, the Board's recognition of the deficiencies and subsequent action suggest the opposite inference. Further, "if mere recognition by the board that controls were previously ineffective or inadequate were sufficient to establish a substantial likelihood of liability, demand would be excused in practically every case involving a restatement of financials." *Kenney*, 426 F. Supp. 2d at 1183 (quoting *Shields ex rel. Sundstrand Corp. v. Erickson*, 710 F. Supp. 686, 691 (N.D. Ill. 1989)); *In re Ferro Corp. Derivative Litig.*, 511 F.3d at 621 ("bald charges of mere failure to take corrective action are . . . inadequate to demonstrate futility") (quoting *Lewis v. Graves*, 701 F.2d 245, 249 (2nd Cir. 1983)). The plaintiff's failure to plead particularized facts establishing that a majority of the directors consciously disregarded their duties over an extended period of time dooms his ability to establish a *Caremark* violation and thus establish that the directors were interested.

18

Therefore, for the reasons discussed above, the Court finds that the plaintiff has failed to allege particularized facts showing that a majority of the Board would not be disinterested under *Rales*, 634 A.2d at 930. The Court next examines whether a majority of the Board lacked independence.

## 2. Independence

"Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816; *Kenney*, 426 F. Supp.2d at 1185. To establish lack of independence, the plaintiff must show that the directors are "beholden to" or "so under their influence" of the extraneous influences that their discretion would be sterilized. *Rales*, 634 A.2d at 936 (citing *Aronson*, 473 A.2d at 815). "A party alleging domination and control of a company's board of directors bears the burden of proving such control by a showing a lack of independence on a part of a majority of the directors." *Kenney*, 426 F. Supp. 2d at 1185 (quoting *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002)). "A director may be controlled by another person if that person has 'the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider' the merits of the demand objectively." *Id*. Defendants argue that the complaint does not contain any allegations which demonstrate a lack of director independence [Doc. 12 at p. 12]. The undersigned agrees.

19

While plaintiff, in relying on the *Deaderick* formula for demand futility, suggests that the defendants engaged in collusive activity [Doc. 29 at pp. 12–13], the complaint contains no allegations of collusion among the defendants or anyone else. There are no allegations that any individual or group of directors has exercised undue influence over the other directors or the Board as a whole. There are no allegations that any individual or group of directors is beholden to any other individual or group of directors. In short, plaintiff has failed to allege any facts sufficient to support a claim of control or "succumbing to influences which convert an otherwise valid business decision into a faithless act," *Aronson*, 473 A.2d at 816, and the Court has found none.

The Court notes that the complaint takes particular aim at defendants McPeak and Boruff. Plaintiff alleges that General McPeak is "[c]hief among the perpetrators," the Company's Lead Director, and a member of the Company's Audit Committee and Compensation Committee [Doc. 1 at ¶¶ 11, 28]. Several paragraphs of the complaint are devoted to the suggestion that General McPeak's reputation and experience as a director were overstated (*e.g.*, "McPeak is in the business of selling his reputation") [Doc. 1 at ¶¶ 11, 17, 36–38]. The complaint also contains general allegations of actions taken by the Compensation Committee or the Audit Committee, described as "with defendant McPeak as its chairman" or "under the direction of McPeak" [*Id*. at ¶¶ 46, 66]. However, the only individual allegation against General McPeak is that he "completely absconded his fiduciary duties and oversight responsibilities" [*Id*. at ¶¶ 11, 36]. This is not a particularized allegation of fact; it is a conclusion. There are no allegations that General McPeak exerted undue

influence over any other directors, that other directors were "beholden to" him, or that he engaged in any collusive activity. Even assuming such allegations could be read into the complaint and General McPeak was not independent, he does not constitute a majority of the Board.

The complaint contains numerous allegations regarding defendant Boruff's increased compensation. In short, the complaint alleges that defendant Boruff received a significant compensation increase as a result of the Company's purported financial performance, which was undeserved [*Id*. at ¶¶ 10, 45–46, 49, 95]. However, there are no allegations that defendant Boruff exercised control over any other directors or that any directors were "beholden to" him. Indeed, there are no allegations of any specific act or omission of any kind by defendant Boruff, only that his compensation was overstated in light of the Company's "real" financial performance. Perhaps it could be inferred that defendant Boruff was "beholden to" or controlled by the members of the Compensation Committee who approved his increased compensation and therefore further inferred that defendant Boruff was not independent. However, that is not what the Complaint says. Even assuming such inferences could (or should) be read into the Complaint and defendant Boruff was not independent, he does not constitute a majority of the Board.

Thus, for the reasons set forth above, the Court finds that the plaintiff has failed to plead particularized facts showing that a majority of the defendants were not independent. Because plaintiff has not shown that a majority of the directors are disinterested or not independent, plaintiff cannot satisfy the first prong of the demand excused test. *Lewis*, 838

S.W.2d at 222. Further, inasmuch as the demand excused test is presented in *Aronson* and *Lewis* in the conjunctive ("and"), the plaintiff must satisfy both prongs in order to excuse the failure to make a pre-suit demand on the Board. The plaintiff's inability to meet the first prong of the test necessarily means the plaintiff cannot show that his failure to make a pre-suit demand on the Board should be excused. Because plaintiff has failed to allege specific facts to demonstrate demand futility, the Court finds that plaintiff has failed to adequately plead that his failure to make a prelitigation demand should be excused as required by Tenn. Code Ann. § 48-17-401(b) and Fed. R. Civ. P. 23.1(b).

In light of the Court's conclusion on the demand requirement, the Court finds it unnecessary to address the defendants' alternate arguments as to whether the complaint states a valid cause of action against them.

## III.    Conclusion

For the reasons set forth above, the Court finds that the plaintiff has not adequately pled specific facts demonstrating that his failure to make a pre-suit demand on Miller Energy's Board of Directors should be excused. Accordingly, the defendants' motion to dismiss [Doc. 12] will be **GRANTED** and this case will be dismissed. An appropriate order will be entered.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

22